IN THE MATTER OF EDWARD J. DESAULNIER, JR.
& another (No. 2).

Suffolk. — November 29, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Constitutional Law,* Self-incrimination, Waiver. *Witness,* Self-incrimination. *Waiver. Practice, Criminal,* Agreement for immunity from prosecution. *Information.*

A witness, during hearings by this court of informations relating to the conduct of one or both of two judges, refused to answer questions asked by special counsel appointed by the court, and on November 29, 1971, the court made findings of fact, and ruled that the running of applicable statutes of limitations for prosecution of criminal acts possibly committed by the witness prior to November 29, 1965, precluded him from invoking the constitutional privilege against self-incrimination as to such acts [763]; that special counsel has sustained the burden of showing the running of the statutory periods [764]; that a stipulation of immunity made by or on behalf of the Attorney General must be enforced fairly and in good faith [764]; and that from a careful examination of all the circumstances it was clear that for the witness to answer questions with respect to events prior to January 1, 1965, would involve him in no risk of self-incrimination [764].

A witness, during hearings by this court of informations relating to the conduct of one or both of two judges, refused to answer questions asked by special counsel appointed by the court, and on November 29, 1971, the court made findings of fact, and ruled that answers of the witness several months previously, in the presence of his counsel and without any claim of privilege against self-incrimination, to questions of the State Police and the Chief Justice of the Superior Court did not constitute a general waiver of the privilege [764]; that the circumstance that such answers were made was evidence that the witness and his counsel did not believe the privilege to be involved, and was evidence that it was not involved [764–765]; and that relevant answers given by the witness to the questions could be introduced against him as admissions in any criminal proceeding in which he might become a defendant [765].

Where a proceeding in which a witness invokes the privilege against
self-incrimination is a probable, logical, or natural continuation or
outgrowth of a prior proceeding in which the witness testified with
the assistance and advice of counsel, and the prior testimony was
recorded by a competent stenographer or was written out in the
presence of the witness, his privilege is to be deemed waived at least
to the extent of the subject matter of the questions which he
answered in the prior proceeding. [766]

*Monroe L. Inker* for I. Charles Baker.

*Edward B. Hanify & John M. Harrington, Jr.,* Special
Counsel.

During the hearings by the Supreme Judicial Court in
this matter one I. Charles Baker, when called as a witness,
refused to answer certain questions, asserting his constitu-
tional privilege against self-incrimination. On November 29,
1971, the court made the following findings, rulings, and
order.

FINDINGS OF FACT.

The court makes the following findings.

1. The witness I. Charles Baker was interrogated by the
State Police on August 5, 1971. He was interrogated on
August 25, 1971, under oath, by Chief Justice McLaughlin
of the Superior Court pursuant to a letter from the Chief
Justice to Baker, dated August 20, 1971, a copy of which
is attached hereto (exhibit A). Baker's counsel was with
him and consulted with him freely at each interrogation.
He made an answer to each question. At no time during
either interrogation did Baker claim any privilege or sug-
gest that his answers might incriminate him. The questions
and answers on each occasion were recorded stenographically
and have been transcribed. Only the questions (with the
exception of a few questions deleted by agreement of coun-
sel) are before us.

2. The present proceeding on the two informations is in
practical effect a continuation of the inquiry into the same
charges and judicial conduct, as the inquiry initiated prior
to August 25, 1971, by Chief Justice McLaughlin of which
the interrogation of Baker on that day was a part.

3. The statute of limitations has run on every substantive criminal offence committed before January 1, 1965, which is suggested in any way by the evidence. There is no suggestion in the evidence or otherwise that Baker has committed any substantive offence (e.g. murder, treason, robbery while armed or by putting in fear) for which the statute of limitations (State or Federal) exceeds six years. See G. L. c. 277, § 63, as amended through St. 1955, c. 781, § 1; c. 265, §§ 17 (as amended through St. 1952, c. 406, § 1), 18, 19, and 21. See also 18 U. S. C. §§ 3281–3291 (1964); Int. Rev. Code of 1954, § 6531.

4. Indictments are pending in the Superior Court for Middlesex County charging Baker with larceny and conspiracy to commit larceny on a number of occasions, all allegedly taking place after January 1, 1968. No pending indictment against Baker charges any criminal act prior to January 1, 1968.

5. A stipulation filed on November 24, 1971, by the District Attorney for the Northern District, and joined in by or in behalf of the Attorney General, is attached (exhibit B). It was supplemented by agreement in open court on that day (Tr. 1197–1198) that "larceny" should be included in the stipulation. We interpret this as inserting the words "or larceny" after the word "conspiracy" in both the first and second sentences of the stipulation.

6. With respect to conspiracies prior to January 1, 1965, and continuing thereafter, the stipulation of the District Attorney, joined in by or on behalf of the Attorney General, is applicable in accordance with its terms.

RULINGS OF LAW.

A. The passage of the time within which a criminal prosecution may be brought, under the applicable statute of limitations, precludes Baker from asserting the privilege against self-incrimination with respect to possibly criminal acts committed prior to November 29, 1965. *Moore* v. *Backus*, 78 F. 2d 571, 577 (7th Cir.). *United States* v. *Goodman*, 289 F. 2d 256, 262–263 (4th Cir.). McCormick,

Evidence, § 135. Wigmore, Evidence (McNaughton rev.) § 2279 (c). See *Hale* v. *Henkel*, 201 U. S. 43, 67.

B. The burden of showing "that the statutory period of limitation has expired" rests upon the party objecting to the invocation of the privilege. See the *Goodman* case, *supra*, pp. 262–263. Special counsel have sustained that burden.

C. To the extent of any stipulation of immunity made by or in behalf of the Attorney General, or by a District Attorney with the approval of the Attorney General, and relied upon by Baker by giving testimony, applicable Massachusetts law requires this court to ensure that the public faith pledged to Baker is duly and fully kept and that the stipulation of immunity is enforced in good faith and fairly so as to constitute an effective grant of immunity in accordance with the terms of the stipulation. *Commonwealth* v. *Benton*, 356 Mass. 447.

D. From a careful consideration of all the circumstances of this inquiry, we are of opinion that it is clear that for Baker to answer questions put to him in direct or cross-examination with respect to events prior to January 1, 1965, will involve him in no risk of self-incrimination. See *Malloy* v. *Hogan*, 378 U. S. 1, 7–14; *Commonwealth* v. *Baker*, 348 Mass. 60, 62–63 (somewhat restricting *Sandrelli* v. *Commonwealth*, 342 Mass. 129, 132–141); *Murphy* v. *Commonwealth*, 354 Mass. 81, 83–84. Cf. *Gambale* v. *Commonwealth*, 355 Mass. 394, 396–398.

E. Baker's answers to Chief Justice McLaughlin on August 25, 1971, and to the State Police on August 5, 1971, do not constitute a general waiver for all purposes of Baker's privilege against self-incrimination. Special counsel have argued that, to the extent of the subject matter of the answers in fact given, such answers constitute a limited waiver of the privilege by Baker. We discuss this contention below in paragraph H.

F. The circumstance that such answers were in fact made, by Baker on August 5 and August 25, 1971, in the presence of Baker's counsel, is evidence that Baker and his

counsel then regarded such questions and answers as having no substantial tendency to incriminate Baker or to provide any link in a chain of facts likely to incriminate Baker, and that they had no such tendency.

G. Relevant answers already given by Baker on August 5 and 25, 1971, could be introduced against him as admissions in any criminal proceeding in which he may be a defendant.

H. Because of the rulings above in paragraphs A through D, inclusive, it is unnecessary to decide whether and to what extent the answers given by Baker, in the presence of his counsel, without claiming any constitutional privilege, in previous interrogations constitute a waiver of such privilege. Were it necessary for this court now to rule on this issue, we would be disinclined to follow somewhat "mechanical" decisions elsewhere that waiver of the privilege against self-incrimination must occur in precisely the same proceeding in which the privilege is claimed. See e.g. *Re Neff*, 206 F. 2d 149, 151–153 (3d Cir.); *United States* v. *Miranti*, 253 F. 2d 135, 139–140 (2d Cir.). See also *People* v. *Walker*, 28 Ill. 2d 585, 589–591; *State* v. *DeCola*, 33 N. J. 335, 345–349; *Snyder Appeal*, 398 Pa. 237, 244–246; Wigmore, Evidence (McNaughton rev.) §§ 2275–2276, esp. at pp. 470–472. Instead, we would be inclined to adopt as (1) in the public interest, (2) advancing the fair administration of justice, and (3) less likely unfairly to obstruct justice and "sound law enforcement," a somewhat limited form of the rule laid down in *Ellis* v. *United States*, 416 F. 2d 791, 800–803 (D.C. Cir.) to the extent stated below. See McCormick, Evidence, § 130. See also Rule 37 (b) of the Uniform Rules of Evidence, 9A U. L. A. 621, which provides that the privilege is not available to a witness "if the judge finds that he . . . while the holder of the privilege has . . . (b) without coercion and with knowledge of his privilege, made disclosure of any part of the matter or consented to such a disclosure made by any one." See also American Law Institute's Model Code of Evidence, Rule 231, p. 169 (see Rule 204, p. 135) and comments at pp. 343–345. We would be inclined to adopt the principle of the *Ellis* case

at least to this extent, viz.: Where a witness assisted and advised by counsel has testified in proceedings or investigations obviously directed to the subject matter of an inquiry or an issue later before a court, and where the prior testimony has been recorded by a competent stenographer or has been written out in the presence of the witness, the witness's privilege is to be deemed waived (a) at least to the extent of the subject matter of the questions which he has answered, (b) where the proceeding in which the privilege is invoked is a probable, logical, or natural continuation or outgrowth of the proceeding or inquiry in which prior testimony has been given by the witness.

ORDER.

Baker's general claim of privilege is denied with respect to any examination or cross-examination concerning events prior to January 1, 1965, subject to Baker's establishing by counsel that there is, as to any particular question, a significant risk of incrimination not hitherto brought to the court's attention. Baker may consult with, and be advised by, his counsel during his examination.

EXHIBIT A

August 20, 1971

Mr. Charles Baker
307 Cambridge Street
Boston, Massachusetts

Dear Mr. Baker:

In connection with the accusations which have been made by Michael Raymond involving the integrity of two justices of the Superior Court of this Commonwealth and in which your name has been prominently mentioned, I am desirous of personally interviewing you. I herewith designate Wednesday, August 25, 1971 at 10:00 a.m. at the office of the Chief Justice of the Superior Court at the courthouse in Boston. I will expect to take your evidence under oath. I will expect to have it transcribed. You may be represented by counsel of your choosing if you desire and you will be afforded the full opportunity to consult with him if you desire.

I request that you bring with you your diary for the years 1962 and 1964. I also request you to bring with you any papers, documents or files which you may have concerning Michael Raymond and your relationship with him whether these files are personal or business. If you have a file involving any of your correspondence or relationships with either Justice DeSaulnier or Justice Brogna, I would like to have it with you and have it available. In addition to the foregoing, will you bring any of your records or documents concerning your business relationship with a New York bondsman named Al Newman.

I desire this appointment to be kept at the time and place designated because my schedule is very tight.

Sincerely yours,

EXHIBIT B

COMMONWEALTH'S STIPULATION

The Commonwealth will not prosecute any indictment returned against I. Charles Baker charging conspiracy or larceny* prior to January 1, 1965.

In prosecuting any indictment charging conspiracy or larceny* subsequent to January 1, 1965, the Commonwealth will not introduce as evidence any conduct or statements of I. Charles Baker engaged in or made prior to that date.

The Commonwealth will not introduce in any criminal proceeding any testimony given by I. Charles Baker before the Supreme Judicial Court.

> For the Commonwealth,
> John J. Droney
> District Attorney

> By,   Richard A. Gargiulo
> First Assistant District Attorney

[Assented to in behalf
of the Attorney General]

[* Underlined words in effect added by stipulation in open court November 24, 1971, Tr. 1197–1198]

Reporter's Note. In open court on November 29, 1971, after the findings, rulings, and order were made, the above stipulation was amplified by adding at the end of the third sentence the following:

> or any facts learned as a consequence of such testimony, except in any prosecution for perjury based upon testimony by I. Charles Baker before the Supreme Judicial Court in this proceeding. The Commonwealth will not prosecute I. Charles Baker for perjury, if any, committed in his sworn testimony before Chief Justice McLaughlin of the Superior Court on August 25, 1971.